UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MARILYN CORNELIUS,

                                    Plaintiff,

v.

INDEPENDENT HEALTH ASSOCIATION, INC.,
incorrectly sued herein as INDEPENDENT
HEALTH,

                                    Defendant.
_____

**REPORT,
RECOMMENDATION
and ORDER**

11-CV-00697(A)(M)

This case has been referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings [8].[1] Before me are motions by defendant Independent Health Association, Inc. ("IHA") to enforce a settlement agreement allegedly reached with plaintiff [33] and to file certain documents in connection with the enforcement motion under seal [34], along with plaintiff's Report pursuant to §2.3 of this court's Alternative Dispute Resolution ("ADR") Plan [27], seeking sanctions for alleged violations of the Plan by IHA's attorney and the mediator.

Although oral argument had been scheduled, I conclude that it is not necessary. For the following reasons, IHA's motion to seal is granted in part and denied in part. Furthermore, I recommend that its motion to enforce the settlement agreement be denied, and that no action be taken with respect to plaintiff's Report.

---

[1]     Bracketed references are to CM/ECF docket entries.

**BACKGROUND**

The essential facts are undisputed. Plaintiff, acting *pro se,* commenced this action on August 19, 2011, seeking relief pursuant to Title VII (42 U.S.C. §§2000e, *et seq.*) for alleged racial discrimination during her employment by IHA. Complaint [1]. In accordance with this court's ADR Plan, a mediation was held at the mediator's office on August 22, 2012. DeLuca Affidavit [33-1], ¶10. IHA alleges that the parties reached a settlement agreement at the conclusion of the mediation, the terms of which included an "economic payment that would be made to Plaintiff" in return for the discontinuance of her claims. Id., ¶17.

According to IHA's attorney, Scott DeLuca, "[a]t the conclusion of the initial mediation session, there was no equivocation by either party that the case had fully and finally settled, and that the parties had a binding agreement to resolve this litigation". Id., ¶24. Mr. DeLuca agreed to "prepare a written settlement agreement to memorialize all of the agreed-upon terms and conditions of the parties' settlement, and [to] provide that agreement to Plaintiff for review and execution." Id., ¶20.

The mediator likewise had the "understanding that the case had fully and finally settled and that the parties had entered into a binding verbal agreement that would be memorialized in a subsequent writing to be provided by Mr. DeLuca to Plaintiff". Redacted Mediator's Affidavit [41], ¶ 18. One of the material terms of the settlement was "that the agreement would contain all of the 'normal' terms of such a settlement . . . and that Plaintiff should seek counsel before executing the agreement". Id., ¶9(h).

On August 23, 2012, the mediator filed a certification [20] stating that the "case has settled. The parties have agreed that R. Scott DeLuca, Esq. will prepare the settlement agreement

and stipulation for dismissal and that the stipulation will be filed no later than October 22, 2012".

On August 24, 2012, Judge Arcara issued a Text Order [21] stating that "the Clerk shall terminate the case subject to the parties' right to re-open it for good cause shown upon their failure to close the settlement up until October 26, 2012".

On August 28, 2012, Mr. DeLuca e-mailed plaintiff, stating: "As discussed and agreed, I am sending you the Settlement Agreement and General Release that we have prepared memorializing the terms of the agreement that were agreed to in principle during our mediation last week . . . . As noted in the Agreement, you are encouraged to seek the counsel of any attorney (at your own expense) concerning this Agreement. If the Agreement is acceptable to you, please execute three (3) originals of the Agreement (and the General Release and the Stipulation of Discontinuance), and return the same to me for execution by Defendant". Plaintiff's Motion to Reopen [22], p. 4 of 12.

Section 24 of the redacted Settlement Agreement and General Release [39] states that "Plaintiff hereby acknowledges and represents that . . . [she] was advised that a final decision to execute this Agreement and accept the terms of this Agreement would need to be made on or before September 19, 2012", and §25 states that the agreement "shall become effective and enforceable against all Parties eight (8) days following the execution of the Agreement by Plaintiff [herein 'Effective Date']. Plaintiff may revoke her execution of this Agreement within seven (7) days of its execution".

Plaintiff wrote to Mr. DeLuca on September 10, 2012 [40], stating that she had "decided not to accept the settlement offer". On October 22, 2012, plaintiff moved to reopen the case, explaining that "Defendant's Counsel encouraged me numerous times to seek counsel of an

attorney concerning the Agreement. Upon having the Agreement reviewed by an Attorney, and after I read the Agreement a number of times; I did not find the Agreement to be acceptable; therefore I did not sign it. The case is not resolved . . . . I was not informed or notified by either the Defendant's Counsel or the ADR Mediator that the case would be closed without the execution of the Settlement Agreement". Plaintiff's Motion to Reopen [22], p. 3 of 12.

By Text Order dated October 26, 2012 [24], Judge Arcara granted plaintiff's motion and reopened the case. These motions ensued.

## ANALYSIS

**A.     IHA's Motion to Seal Documents [34]**

IHA has moved for leave to file under seal all of the draft Settlement Agreement and General Release, as well as the mediator's Affidavit and plaintiff's September 10, 2012 letter, arguing that these documents are entitled to confidentiality. IHA's Memorandum of Law [37]. While §5.10(A) of this court's ADR Plan emphasizes that "[m]ediation is confidential and private", §5.10(A)(4)(d) provides that "[t]he confidentiality of information disclosed during mediation does not prohibit or limit . . . a party from seeking to enforce a settlement agreement".

Courts should "allow only those portions of the documents which are truly confidential to be filed under seal, since it is well settled that the public has a common-law right of access to judicial records . . . . The presumption of access is at its strongest when the document in question, as here, has been submitted as a basis for judicial decision making". North Forest Development, LLC v. Walden Ave. Realty Associates, LLC, 2009 WL 5959961, *7 (W.D.N.Y. 2009), adopted, 2010 WL 741992 (W.D.N.Y. 2010) (Arcara, J.). *See also* United States ex rel.

Stewart v. Louisiana Clinic, 2002 WL 31819130, *10 (E.D.La. 2002) ("Counsel are instructed . . . to request sealing only of those parts of memoranda and exhibits that are truly confidential").

Therefore, while these documents in their entirety are being filed under seal [38], redacted copies are being filed publicly [39-41]. The redactions relate only to "truly confidential" information, such as the amount of the payment to be made by IHA.[2]

**B.    IHA's Motion to Enforce the Alleged Settlement Agreement [33]**

"A party seeking to enforce a purported settlement agreement has the burden of proof to demonstrate that the parties actually entered into such an agreement." Benicorp Insurance Co. v. National Medical Health Card Systems, Inc., 447 F.Supp.2d 329, 335 (S.D.N.Y. 2006). In determining whether the parties' alleged oral settlement is enforceable absent a written agreement, I must consider "(1) whether there has been an express reservation of the right not to be bound in the absence of a signed writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing". Ciaramella v. Reader's Digest Association, Inc., 131 F.3d 320, 323 (2d Cir. 1997). "No single factor is decisive, but each provides significant guidance." Id.

Accordingly, each of these factors will be considered:

---

[2]    The fact that payment would be made is not itself confidential, as that was publicly disclosed by IHA. *See* DeLuca Affidavit [33-1], ¶17.

1. **Express Reservation**

In Ciaramella, the court cited "numerous indications in the proposed settlement agreement that the parties did not intend to bind themselves until the settlement had been signed . . . . For instance, in paragraph 10, the agreement states, 'This Settlement Agreement and General Release shall not become effective ('the Effective Date') until it is signed' . . . . Under the terms of the proposed settlement, RDA had no obligation to pay Ciaramella until the agreement was signed and became effective . . . . [T]he final draft contains a merger clause which states, 'This Settlement Agreement and General Release constitutes the complete understanding between the parties, may not be changed orally and supersedes any and all prior agreements between the parties. No other promises or agreements shall be binding unless in writing and signed by the parties.' The presence of such a merger clause is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement . . . . Paragraph 9 states, in relevant part, 'Mr. Ciaramella represents and warrants that he has executed this Settlement Agreement and General Release after consultation with his legal counsel; that he voluntarily assents to all the terms and conditions contained therein; and that he is signing the Settlement Agreement and General Release of his own force and will.' Ciaramella's signature was meant to signify his voluntary and informed consent to the terms and obligations of the agreement. By not signing, he demonstrated that he withheld such consent." 131 F.3d at 324-25.

Virtually identical provisions are found in the redacted Settlement Agreement and General Release [39] which IHA sent to plaintiff: §25 states that it shall becomes enforceable eight days after signature by the plaintiff; §3 states that IHA's payment is not due until 15 days after plaintiff signs and returns the Agreement; §19 contains a merger clause stating that it "supersedes all

other written or oral exchanges" between the parties; §24(a)-(c) state that plaintiff is signing the Agreement after being given the opportunity to review its provisions with her attorney; and §24(d) states that she is signing the Agreement "voluntarily and of her own free will . . . and assents to all of the terms and conditions contained herein".

2.      **Partial Performance**

"A second factor for consideration is whether one party has partially performed, and that performance has been accepted by the party disclaiming the existence of an agreement . . . . No evidence of partial performance of the settlement agreement exists here. RDA paid no money to Ciaramella." Ciaramella, 131 F.3d at 325. Similarly, in this case IHA had not yet made payment to plaintiff, as payment was not due until 15 days after the Settlement Agreement and General Release had been signed and returned by plaintiff.

3.      **Agreement Upon All Terms**

As stated by the mediator, one of the material terms allegedly agreed upon at the mediation was that "Plaintiff should seek counsel before executing the agreement". Redacted Mediator's Affidavit [41], ¶9(h). Since courts "should not ascribe to parties an intention in making agreements to do useless acts", Greenberg v. New York City Planning Commission, 48 A.D.2d 830, 832 (2d Dept.), app. dismissed, 37 N.Y.2d 782 (1975), I may not lightly assume that plaintiff's right to consult with an attorney would have no effect on her ability to accept or reject the Agreement.

"An employee's settlement of a Title VII claim must be knowing and voluntary." Baptist v. City of Kankakee, 481 F.3d 485, 490 (7th Cir. 2007). "Courts in the Second Circuit

employ a 'totality of the circumstances test' to determine whether a release of Title VII claims meets the 'knowing and voluntary' standard." Ascent Healthcare Solutions, Inc. v. Dumont, 2012 WL 1599868, *4 (D.Vt. 2012). "Factors relevant to this inquiry include . . . . whether the employer encouraged the employee to consult an attorney and whether the employee had a fair opportunity to do so." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 438 (2d Cir. 1998).

IHA suggests that "consultation with counsel is merely an opportunity for a releasor to fully and completely understand what the language of the agreement means". IHA's Memorandum of Law [33-2], p. 12. That argument implicitly recognizes that absent such an opportunity, plaintiff's agreement to settle cannot be considered to be "knowing and voluntary". This is confirmed by §24 of the redacted Settlement Agreement and General Release [39], which states that plaintiff "was advised that *a final decision* to execute this Agreement and accept the terms of this Agreement *would need to be made* on or before September 19, 2012" (emphasis added). If a "final" decision was to be made by September 19, 2012, then whatever was discussed at the mediation on August 22, 2012 was neither final nor binding.

### 4. Type of Agreement

"Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court." Ciaramella, 131 F.3d at 326; Powell v. Omnicom, 497 F.3d 124, 131 (2d Cir. 2007). For example, in Wilson v. General Mills, 2010 U.S. Dist. LEXIS 14139 (W.D.N.Y. 2010) (McCarthy, M.J.), adopted, 2010 U.S. Dist. LEXIS 143153 (W.D.N.Y. 2010) (Skretny, J.), aff'd, 2011 U.S. App. LEXIS 10598 (2d Cir. 2011) (Summary Order), the parties placed the material terms of the settlement on the record in open court, following which I stated

(again on the record): "I believe it's everyone's intention that notwithstanding the fact that a written agreement will be executed . . . the terms placed on the record today are the material terms of the settlement, and that a legally enforceable settlement arises today". Id., \*\*2-3. Here, by contrast, no settlement terms were placed on the record, nor were they reduced to writing *and* signed by the parties.

Under these circumstances, the fact that both IHA and the mediator may have believed that a binding agreement was reached at the mediation does not persuade me that such was the case. See Ciaramella, 131 F.3d at 325 (counsel's statement that "We have a deal" is not "an explicit waiver of the signature requirement").

In any event, §25 of the redacted Settlement Agreement and General Release proffered by IHA expressly gives plaintiff the right to "revoke her execution of this Agreement within seven (7) days of its execution". Since plaintiff has repudiated the alleged settlement, I have no doubt that she would invoke this right even if she had otherwise agreed to execute the Agreement. Therefore, no purpose would be served by requiring plaintiff to execute the Agreement even if she had agreed to do so. See Jaffe-Spindler Co. v. Genesco, Inc., 747 F.2d 253, 258 (4th Cir. 1984) ("the courts should not require the performance of acts when the doing of them will not further any worthwhile purpose"); Sarei v. Rio Tinto, PLC, 550 F.3d 822, 830 (9th Cir. 2008) ("The courts do not require one to do a useless act").

C.    **Plaintiff's Report [27]**

Pursuant to §2.3 of the ADR Plan, plaintiff has filed a Report [27] seeking sanctions against Mr. DeLuca and the mediator for allegedly improper conduct during the mediation. Plaintiff

claims that Mr. Deluca improperly attempted to "bully and coerce" her into signing the Settlement Agreement and General Release, and that the mediator did not intervene to prevent this conduct.

Section 2.3 states that "[u]pon receipt of such a report, the Court may take whatever actions it deems appropriate, including issuing an order to show cause why sanctions should not be imposed". Although I do question how Mr. DeLuca could reasonably have believed that plaintiff had an unconditional obligation to execute the Settlement Agreement and General Release (particularly in view of §§24 and 25 of that Agreement), I do not believe that sanctions are necessary, since I am recommending that IHA's motion be denied without the need for plaintiff to respond. Therefore, I recommend that Judge Arcara take no action in response to the Report.

**CONCLUSION**

For these reasons, IHA's motion to file documents under seal [34] is granted in part and denied in part; furthermore, I recommend that its motion to enforce the settlement agreement [33] be denied, and that no action be taken with respect to plaintiff's Report [27].

Unless otherwise ordered by Judge Arcara, any objections to this Report, Recommendation and Order must be filed with the clerk of this court by December 13, 2012 (applying the time frames set forth in Rules 6(a)(1)(C), 6(d), and 72(b)(2)). Any requests for extension of this deadline must be made to Judge Arcara. A party who "fails to object timely . . . waives any right to further judicial review of [this] decision". Wesolek v. Canadair Ltd., 838 F. 2d 55, 58 (2d Cir. 1988); Thomas v. Arn, 474 U.S. 140, 155 (1985).

Moreover, the district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the

magistrate judge in the first instance. Patterson-Leitch Co. v. Massachusetts Municipal Wholesale Electric Co., 840 F. 2d 985, 990-91 (1st Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) and (c) of this Court's Local Rules of Civil Procedure, written objections shall "specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection . . . supported by legal authority", and must include "a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge". Failure to comply with these provisions may result in the district judge's refusal to consider the objections.

Dated: November 26, 2012

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge